Robert K. Shelquist, MN #21310X
Karen H. Riebel, MN #0219770
Rebecca A. Peterson, CA #241858
Stephen M. Owen, MN #0399370
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:    (612) 339-0981

*Additional Counsel Listed in Signature Block*
**Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL PETROSYAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br> vs.<br><br>ROBINHOOD FINANCIAL LLC, a Delaware corporation; ROBINHOOD SECURITIES, LLC, a Delaware corporation; and ROBINHOOD MARKETS, INC., a Delaware corporation.<br><br>        Defendants. | Case No.   '21 CV0238 JLS DEB<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Breach of Contract;<br>2. Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>3. Negligence;<br>4. Breach of Fiduciary Duty;<br>5. Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750;<br>6.  Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Emil Petrosyan ("Plaintiff"), by and through his attorneys, brings this class action lawsuit against Defendants Robinhood Financial LLC, Robinhood Securities, LLC; and Robinhood Markets, Inc. ("Defendants" or "Robinhood"), on behalf of himself and all others similarly and alleges, upon personal knowledge, information and belief, and the investigation of his counsel.

## NATURE OF ACTION

1.     Founded in 2013, Robinhood is a multi-billion online brokerage firm and website investment service that places stock trade orders on behalf of users like Plaintiff and Class members. According to its website, Robinhood is on a "mission to democratize finance for all" with the belief that "the financial system should be built to work for everyone." (About Us, ROBINHOOD (2021), https://robinhood.com/us/en/about-us/ (last visited January 29, 2021). Robinhood, as a brokerage firm, owes its clients the fiduciary duties of loyalty, good faith, to act reasonably and to avoid choosing competing interests over the best interests of its clients.

2.     On and around January 28, 2021, however, Robinhood deliberately, willfully, and knowingly denied its retail investors, including Plaintiff and the Class, access to various stocks, including, but not limited to, AMC Theatres "AMC" and Nokia "NOK," (the "Securities") by restricting their ability to make transactions with these stocks. Upon information and belief, by preventing and limiting the ability

of Plaintiff and the Class to trade the Securities, Robinhood sought to benefit large, institutional investors and hedge funds that bet against, or shorted, the Securities.

3. Upon information and belief, Plaintiff and the Class were denied hundreds of millions of dollars in gains and potential gains, and denied the ability to mitigate significant losses, as a result of Robinhood's actions. Robinhood acted against the best interests of its clients and in favor of its own financial interests and of other market participants.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2)(a). The aggregate claims of all members of the proposed Class and are in excess of $5,000,000, exclusive of interests and costs, and there are more than one hundred (100) putative class members. Further, several members of the putative class are citizens of a different state from Defendants.

5. This Court has personal jurisdiction over Defendants, who are citizens of California, and conduct business in California, including the Southern District, and a substantial portion of the acts complained of herein took place in California.

**VENUE**

6. Venue is proper pursuant to 28 U.S.C. §1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and Plaintiffs' cause of action arose in this district.

**PARTIES**

7.      Plaintiff Emil Petrosyan is an adult citizen of California and resides in San Diego County.  At all times material hereto, Mr. Petrosyan acquired the Robinhood mobile phone application and utilized the same to acquire trade-and - hold securities in California.  On or around March 2017, Plaintiff created a Robinhood account and began using Robinhood for brokerage services. When Defendant halted trading on its securities exchange platform of Nokia (NOK) and AMC Theatres (AMC), among other securities, for retail investors, Mr. Petrosyan owned shares in AMC and Nokia.

8.      Defendant Robinhood Markets, Inc. is a financial service holding company incorporated in Delaware with its principal place of business located at 85 Willow Road, Menlo Park, CA 94025. It is the holding company for Defendants Robinhood Financial LLC and Robinhood Securities, LLC. Defendant Robinhood Markets, Inc. is a named party to the Robinhood Terms & Conditions Agreement governing Robinhood's website and mobile applications.

9.      Defendant Robinhood Financial LLC is a Delaware corporation with its principal place at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. and an affiliate of Defendant Robinhood Securities, LLC.  Robinhood Financial, LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC, acts as an introducing broker-dealer, offering brokerage

services to retail investors and allowing customers to open online accounts and electronically deposit funds. It is a named party to the Robinhood Terms & Conditions Agreement governing Robinhood's website and mobile applications. It is also a party to the Robinhood Customer Agreements, governing the purchase, sale, or carrying of securities or contracts and/or relating thereto and/or the borrowing of funds.

10.    Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc. and a registered as a broker-dealer with the SEC and full service securities firm. Once a customer creates an account with Robinhood Financial LLC, Defendant Robinhood Securities is the custodian of customers' finds and the securities customers purchase. Defendant Robinhood Securities services customer accounts; executes, clears, and settles customer trades; prepares and distributes customer account statements and trade confirmations; and extends credit to customer margin accounts. It is a party to the Robinhood Customer Agreements governing the purchase, sale, or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through it.

# FACTUAL ALLEGATIONS

**Robinhood Targets Young Investors and Experiences Considerable Growth.**

11.     Founded in 2013, Robinhood is a registered broker-dealer with the Securities Exchange Commission and a member of the Financial Industry Regulation Authority ("FINRA"). It offers self-directed securities brokerage services to customers through its website and smartphone applications. Robinhood owes a duty of good faith and a duty of loyalty to its clients, requiring it to avoid favoring competing interests over the best interests of its clients.

12.     The average age of Robinhood's customers is 28-41, and many of them use Robinhood to make their first stock purchase. Vlad Tenev, a founder and co-chief executive of Robinhood, explained in an interview that young investors risked greater losses by not investing in stocks at all, as not participating in the markets "ultimately contributed to the sort of the massive inequalities that we're seeing in society."

13.     In March 2015, Robinhood began offering retail brokerage accounts to the general public, and in particular, targeted young adults that had little investing experience. Robinhood promised "commission-free" and "discount" services, and on March 23, 2016, Robinhood tweeted "Let the people trade."

14.     Robinhood has experienced significant growth as a relatively new online brokerage firm. By 2019, Robinhood had a valuation of $7.6 billion and in

2020, became worth approximately $8.3 billion. As of its most recent SEC filing, Robinhood has 13 million users.

**Robinhood Restricts Trading for Retail Investors In January 2021.**

15.     On or around January 22, 2021 stocks in Nokia Corporation, ("NOK") began to rise.

16.     On or around January 26, 2021, stocks in AMC Entertainment Holdings, Inc. ("AMC") began to rise.

17.     At these times, Robinhood allowed retail investors, including Plaintiff and the Class, to trade NOK and AMC on the open market.

18.     On or about January 28, 2021, in order to slow the growth of NOK, AMC, and other securities, Robinhood deprived its individual retail investor customers the ability to transact on its platform for certain securities, including NOK, and AMC.

19.     Through its website, Robinhood stated, "[w]e continuously monitor the markets and make changes where necessary. In light of recent volatility, we are restricting transactions for certain securities to position closing only." https://blog.robinhood.com/news/2021/1/28/keeping-customers-informed-through-market-volatility (Last visited February 2, 2021). These securities included AMC and NOK.

20.     A notification appeared on Robinhood telling its clients that they could only close their position on NOK and AMC.

21.     Robinhood had completely blocked retailer investors from purchasing AMC, NOK, and other securities for no legitimate reason, therefore depriving retailer investors from the benefits of Robinhood's services.

22.     Meanwhile, hedge funds and institutional investors were able to trade these securities as normal.

23.     Robinhood claims that it restricted trading of the Securities because it needed to comply with deposit requirements mandated by SEC-registered clearinghouses.     https://blog.robinhood.com/news/2021/1/29/what-happened-this-week (last visited February 3, 2021)

24.     Upon information and belief, Robinhood's actions were done purposefully and knowingly to manipulate the stock market for the benefit of hedge funds and institutional investors, and not its clients.

25.     The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Robinhood has breached these, among other, obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

***Plaintiff's Experience***

26.     On or around the morning of January 28, 2021, Plaintiff opened the Robinhood mobile app to place an order for AMC and NOK, two stocks in which he already owned share.

27.     Plaintiff, however, found that the app prevented him from purchasing additional stock in these companies. Plaintiff received a notification that he could only "close [his] position in this stock[.]"

28.     Because Robinhood prevented him from purchasing additional stock of AMC and NOK, Plaintiff was divested of the ability to trade AMC and NOK.  Thus, Plaintiff was denied earning opportunities through AMC and NOK, was damaged in the positions held, and/or was prevented from mitigating losses in these positions.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this claim pursuant to Federal Rule of Civil Procedure 23 on behalf of the Class, including, or in the alternative, all subclasses, as follows:

(a) All Robinhood clients within the United States who, due to Robinhood's purposeful and knowing disabling of any part of the functionality of their accounts, were unable to execute trades on AMC.

(b) All Robinhood clients within the United States who, due to Robinhood's purposeful and knowing disabling of any part of the functionality of their accounts, were unable to execute trades on NOK.

30.     Explicitly excluded from the Class are: (i) Robinhood entities and their current officers, agents, and employees; (ii) counsel for either party; and (iii) the Court and its personnel presiding over this action.

31.     Plaintiff hereby reserves the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

32.     The proposed Classes meet the criteria for certification under Rules 23(a) and (b)(3).

33.     **Numerosity. Fed. R. Civ. P. 23(a)(1)**. The members of the Classes are so numerous that the joinder of all members is impractical. Robinhood had approximately 13 million user accounts in November 2020. Upon information and belief, Plaintiff states that there are at least hundreds of thousands of Class members who have been damaged by Robinhood's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff but can be readily ascertained from Robinhood's records.

34.     **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Robinhood breached their agreement with Plaintiff and the Class to permit trading of the Securities on Robinhood's platform;

(b) Whether Robinhood's conduct unfairly divested Plaintiff and the Class of the benefit of their agreement with Robinhood;

(c) Whether Robinhood failed to meet its duty of care to Plaintiff and the Class to diligently execute or permit reasonable trading requests;

(d) Whether Robinhood failed to meet its duty of care when it purposefully, knowingly, and without justification or notice, disabled certain trading privileges of Plaintiff and the Class;

(e) Whether Robinhood failed to meet its duty of care when it purposefully, knowingly, and without justification or notice, restricted certain abilities of Plaintiff and the Class to freely participate in the trading of the Securities, thereby causing Plaintiff and the Class to suffer damages;

(f) Whether Robinhood breached its duty of care when it purposefully, knowingly, and without justification or notice, failed to provide financial services in connection with the Securities;

(g) Whether Robinhood violated the Financial Industry Regulator Authority Rule, 5310;

(h) Whether Robinhood breached its fiduciary duties to Plaintiff and the Class;

(i) Whether Robinhood violated the CLRA;

(j) Whether Robinhood engaged in unlawful business practices in violation of Cal. Bus. & Prof. Code § 17200;

(k) Whether Robinhood engaged in unfair business practices in violation of Cal. Bus. & Prof. Code § 17200;

(l) Whether Plaintiff and the Class were injured as a result of Robinhood's conduct.

35.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of those of other Class members. All claims depend on Robinhood's uniform course of conduct described herein, and any factual differences in individual Class members' claims are rooted in the same cause. Plaintiff's damages and injuries are akin to other Class members, all of those injuries and damages arise from Robinhood's uniform conduct, and Plaintiff seeks relief consistent with the relief sought by the Classes.

36.     **Adequacy. Fed R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because he is a member of the Classes he seeks to represent, he is committed to pursuing this matter against Robinhood to obtain relief for the Classes, and has no conflicts of interest with the Class members. Furthermore, Plaintiff's counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class members.

37.     **Superiority Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and

no unusual difficulties are likely to be encountered in the management of this class action. The paramount purpose of a class action mechanism is to permit litigation against any wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. The Classes are largely compromised of individuals without much investing experience, not large institutional investors. Thus, the damages suffered by Plaintiff and Class members are relatively small compared to the burden and expense required to individually litigate their claims against Robinhood, and therefore individual litigation to redress Robinhood's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system, increase the delay and expense to all parties, and create the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

38.    Unless a Class is certified, Robinhood will retain monies receives as a result of its conduct that were undertaken from Plaintiff and Class members.

## COUNT I
### Breach of Contract

39.    Plaintiff re-allege and incorporate paragraphs 1-37 of this Complaint as though fully set forth herein.

40.    To use Robinhood's Trading Platform, clients, including Plaintiff and the Class, must enter into a Customer Agreements with Robinhood.

41.    Plaintiff and the Class entered into a Customer Agreements with Robinhood;

42.    Plaintiff and the Class fulfilled their obligations under the Customer Agreements by adhering to their terms and using Robinhood's trading services through its website and trading platform.

43.    Robinhood was obligated to provide trading services required under those contracts at all times, including but not limited to, trades for AMC and/or NOK.

44.    Robinhood unfairly interfered with the rights of Plaintiff and the Class and breached its Customer Agreements by, among other things, (i) failing to disclose that its platform was going to arbitrarily remove profitable stocks from its platform; (ii) that Robinhood failed to provide adequate explanation to their customers; (iii) that Robinhood knowingly put their clients at a disadvantage compared to customers who used other trading apps; (iv) that Robinhood failed to provide access to its own financial incentives to remove certain securities including AMC and NOK; (v) that Robinhood's prohibited plaintiffs from performing in a timely manner, if at all, under the contract; (vi) that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and (viii) Robinhood failed to exercise trades and actions requested by customers.

45.     As such, Robinhood breached its Customer Agreements with Plaintiff and Class members.

46.     Robinhood's failure to perform and its breaches of the Customer Agreements resulted in damages and losses to Plaintiff and the Class and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreements. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

47.     Plaintiff hereby incorporates by reference the factual allegations set forth above.

48.     Plaintiff and the Class entered into Customer Agreements with Robinhood requiring Robinhood to provide brokerage services.

49.     Every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

50.     Robinhood materially breached the covenant of good faith and fair dealing implied in the Customer Agreements as a matter of law by, among other things, (i) failing to provide notice that certain critical account functions of Plaintiff and the Class would be suspended, (ii) actually suspending such account functions,

and (iii) knowingly undertaking certain acts that undermined Plaintiffs' rights under the Customer Agreements and their interest in the Securities.

51.   Plaintiff and the Class expected that Robinhood would use its best efforts to support and fulfill the terms of the Customer Agreement. The actions of Robinhood as described in this Complaint violate the implied covenant of good faith and fair dealing and have caused Plaintiff and the Class to suffer damages in an amount to be determined at trial.

52.   As direct and proximate cause of Robinhood's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have been materially prejudiced and have sustained damages in an amount to be proven at trial.

### COUNT III
### Negligence

53.   Plaintiff hereby incorporates by reference the factual references set forth above.

54.   Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its clients, including retail investors such as Plaintiff and the Class.

55.   Robinhood had a duty to exercise reasonable care in providing trades on the free, open market for its customers.

56.   Robinhood breached its duties by, among other things:

(a) failing to diligently permit and execute reasonable trading requests on behalf of Plaintiff and the Class;

(b) disabling the trading privileges of Plaintiff and the Class without justification or notice;

(c) restricting the ability of Plaintiff and the Class to freely participate in trading of the Securities without justification or notice;

(d)  failing to provide financial services related to the Securities;

57.    Robinhood's negligent breaches of its duties directly and proximately caused harm to Plaintiff and the Class that would not have occurred but for Robinhood's breaches of its duty of care.

58.    As a result and proximate cause of Robinhood's negligence, Plaintiff and the Class suffered damages in an amount to be determined at trial.

## COUNT IV
## Breach of Fiduciary Duty

59.    Plaintiff hereby incorporates by reference the factual references set forth above.

60.    As a licensed provider of financial services, Robinhood owed a fiduciary duty to Plaintiff and the Class and owed them the highest duties of loyalty, care, good faith, and to act reasonably and avoid choosing competing interests over that of its clients.

61.    Robinhood breached its fiduciary duties to Plaintiff and the Class by, among other things:

(a) failing to disclose that its trading platform was going to prohibit the trading of the Securities;

(b) actually prohibiting the trading of the Securities for the benefit of other market participants;

(c) failing to providing access to its to financial services in a timely manner;

(d) failing to comply with all applicable legal, regulatory, and licensing requirements, including the FINRA

62.    Robinhood's breaches of its fiduciary duties caused harm to Plaintiff and the Class, and was a substantial factor in causing this harm.

63.    Plaintiff and the Class have suffered damages as a result of Robinhood's breaches of its fiduciary duties in an amount to be determined at trial.

**COUNT V**
**Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750**

64.    Plaintiff hereby incorporates by reference the factual references set forth above.

65.    The California Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair

and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

66.    The CLRA applies to Robinhood's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

67.    At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

68.    Robinhood's practices in connection with the marketing and sale of its financial services violate the CLRA in at least (but not limited to) the following respects:

(a) Section 1770(a)(5): Robinhood knowingly misrepresented its services;

(b) Section 1770(a)(7): Robinhood represented its financial services to be of a particular standard, quality, or grade, but they were not;

(c) Section 1770(a)(9): Robinhood knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

69.    Pursuant to § 1782(d) of the CLRA, Plaintiff and Class members seek a Court order for injunctive relief, and reserve the right to amend the Complaint for an order seeking damages under § 1782.

70.     Robinhood's conduct is fraudulent, wanton, and malicious.

71.     Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT VI
### Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

72.     Plaintiff hereby incorporates by reference the factual references set forth above.

73.     Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq*. ("UCL"), because Robinhood's conduct is unlawful, unfair, and fraudulent as herein alleged.

74.     Plaintiff, the members of the Class, and Robinhood are a "person" or "persons" within the meaning of Section 17201 of the UCL.

75.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its services.

76.     Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact and suppression of otherwise available securities, as described herein, violated the UCL's unlawful, unfair, and fraudulent prongs.

77.    Robinhood's conduct, as described herein, violates the UCL's unlawful prong because (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing, (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) violates FINRA Rule; and (6) has potentially unlawfully and unjustly enriched Robinhood.

78.    Robinhood's conduct, as described herein, violates the UCL's unfair prong because it violates established public policy intended to regulate the fair and ethical sale of goods and services (securities) to consumers as set forth in the CLRA and by FINRA, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the Class that outweigh any purported benefit.

79.    Plaintiff has standing to pursue this claim because he has been injured by suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

80.    Plaintiff would not have used Robinhood's services and/or placed trades and made financial transactions through those services had he known the truth and Robinhood's plan to forbid the trading of certain securities, though he has an interest in continuing to use the service in the future should Robinhood cure the problems set forth in this Complaint.

81.    As a direct result of Robinhood's actions and omissions of material facts, Plaintiff and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made, and lost their ability to make informed and reasoned purchasing decisions.

82.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code § 17205. 83.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

(a) Certifying the Classes as requested herein;

(b) Awarding damages, restitution and disgorgement of Robinhood's revenues to Plaintiff and Class members;

(c) Awarding attorneys' fees and costs; and

(d) Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

DATED:  February 9, 2021

Respectfully submitted,

s/Rebecca A. Peterson
Robert K. Shelquist, MN #21310X
Karen H. Riebel, MN #0219770
Rebecca A. Peterson, CA #241858
Stephen M. Owen, MN #0399370
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981

Leo Kandinov, CA #279650
**BARR LAW GROUP**
501 W Broadway Suite 800
San Diego, CA 92101
Telephone: (619) 400-4966
Leo@barrlaw.com

**Attorneys for Plaintiff**